## CHARLESTOWN.

### HARE v. PARKERSBURG.

Submitted June 23, 1884—Decided September 20, 1884.

In a suit for a breach of contract the damages should not be based on a conjectural estimate of the profits, which might have been made out of the contract; but if the contract is for the delivery of a certain quantity of gravel, the jury may legitimately ascertain the damages sustained by a breach of contract, whereby the plaintiff was prevented from delivering the gravel by an improper cancellation of the contract by the defendant, by subtracting from the price to be paid for the gravel, when delivered, the cost to the defendant of delivering this quantity of

gravel; and in determining this the jury may properly consider what had been the actual cost of delivering a like quantity of gravel by the defendant to the plaintiff under a previous and similar contract.

GREEN, JUDGE, furnishes the following statement of the case:

The city of Parkersburg by its mayor and council on July 12, 1881, awarded to Martin Hare a contract for furnishing good, coarse screened gravel for the city, he being the lowest bidder for one thousand yards with the privilege of more at the same price, fifty-nine cents per cubic yard, the said gravel to be delivered from time to time, as might be called for by the committee on streets and alleys, but a good and sufficient bond for the faithful performance of the contract was required to be given by him. The terms of this contract were set out as above stated in an order awarding this contract made on the regular order-book of the mayor and council of the town. A warrant based on this contract was brought before a justice of the peace of the county of Wood. The summons stated the cause of action thus: "To answer the complaint of Martin Hare in a civil action for the recovery of damages sustained by him by virtue of the failure and refusal of the city of Parkersburg to comply with and carry out a contract awarded by it to Martin Hare on July 12, 1881, for the furnishing to the city of Parkersburg gravel, which contract the city of Parkersburg undertook to rescind on July 26, 1881, without the consent of the said Martin Hare." On December 30, 1881, after having examined six witnesses the justice rendered a judgment in favor of Martin Hare, the plaintiff, for eighty dollars with interest from time of trial till paid and costs. From this judgment the city of Parkersburg took an appeal to the circuit court of Wood county. The case was tried in that court on the plea of *non-assumpsit* by a jury of six men, who found a verdict for the plaintiff for two hundred dollars. The defendant moved the court for a new trial, which the court refused, and on a subsequent day of the term, December 30, rendered a judgment for the defendant for two hundred dollars, the damages assessed by the jury, together with his costs by him about his suit expended.

To this action of the court and judgment a bill of excep-

tions was filed setting out all the facts proven. They were as follows: The contract was made as above stated on July 12, 1881, and was rescinded by the city of Parkersburg on July 26, 1881, two weeks after it was entered into on the ground, as stated in the books of the mayor and council of this city, "that no bond had been given in accordance with the terms of the resolution awarding him the contract." The reason why this bond had not been given was proven to be, that the day after the contract was awarded him Martin Hare called upon the chairman of the committee on streets and alleys and told him, he was ready to give bond, and was told, that the attorney for the city, who was in the habit of drawing such bonds, was not in the city, but that he would have the bond prepared by this attorney, as soon as he returned to the city, and it could then be executed. This chairman of the committee had authority to act for the city of Parkersburg in matters pertaining to the construction and improvement of the streets and alleys of the city and in carrying out and attending to contracts made in relation thereto, and, when bond was required of a contractor, attended to having it prepared by the attorney to be executed by the contractor. Martin Hare called several times on the said chairman to see about executing the required bond, and he was at all times ready and willing to execute this bond, but it never was ready for him to execute, and he never did execute it or procure or tender his security. This chairman of the committee on streets and alleys told Martin Hare to go ahead and furnish the gravel according to his contract; and he did furnish four barge-loads of gravel, which were received and paid for; the amount so delivered was seventy-three and one half yards and the price paid forty-three dollars and thirty-six cents. On July 19, a week after the contract was made, a controversy arose as to whether the fifth barge of gravel was such as the contract required, and the delivery of it was thereby delayed, and a heavy rain-storm coming on, it was sunk in the river at the wharf. The gravel had to be taken out of the barge, and money expended in pumping out and raising the barge, and it had when raised again to be reloaded, in doing which things fifty dollars were expended. The evidence was conflicting as to whether two of the barges of gravel,

which were accepted and paid for by the city, were or were
not in quality such as the contract required.    This was the
state of the case on July 26, 1881, which was the first meet-
ing of the council after the contract was made, when this
contract was rescinded by the council.    The reasons stated
on the record of the city council was that the bond had not
been given by the plaintiff as before stated; this resolution of
rescission was passed by a bare majority of the council and
could not have been passed, if all the members of the council
had been present.    The plaintiff received no notice, that the
council of the city proposed to take such action; but he hap-
pened to be present when it was taken.    The council after
the rescission of this contract gave the contract to another
person.    It was also proven that the plaintiff was able and
willing to give the required bond, had he been allowed an
opportunity to do so, but the contract was rescinded without
any previous notice to him, that it was proposed to do so.
He had before that time been a contractor with the city to
furnish gravel, and the bond to be executed by him had been
drawn by the .city, and till the rescission of the contract he
supposed it would be so done again.    The plaintiff by his own
evidence proved "that he had before furnished gravel to the
defendant, the city, at fifty-nine cents per cubic yard and in
so doing had made a profit of twenty-five cents per yard, and
under this contract with the defendant he believed he could
have made a profit of twenty-five cents on every cubic yard
of gravel furnished by him."

From the judgment of the circuit court .rendered Decem-
ber 30, 1882, a writ of error and *supersedeas* has been awarded
by this Court.

*Cole & Miller* for plaintiff in error.

*G. W. Neale* for defendant in error.

GREEN, JUDGE:

There can be no question, that on the contract above stated
the city of Parkersburg had a right to require of the plain-
tiff below, Martin Hare, to give a bond with good security for
the faithful performance of his contract.    Had this been

done, and he had been unable and for this reason or for any other he had refused to give the required bond, the city-council would have had a right to do what they did, rescind the contract and enter into a contract for the same work with another; and the plaintiff below would have had no cause of action. But it would seem to be equally clear, that under this contract, there having been by it no time fixed when this required bond was to be given, the plaintiff below was entitled to a reasonable time within which to give the bond, after it was required. The evidence clearly shows that this reasonable opportunity was not given to him, and that if it had been given to him, the required bond would have been given, the plaintiff below being ready, willing and anxious to give it. The ground, on which the council rescinded the contract, was that the plaintiff below had not given the required bond. They had not only not called upon him to give this bond before they so acted, but they gave him no notice that they intended to rescind this contract; and they knew or ought to have known, that he was ready and willing to execute the required bond, as he had frequently told one of the members of the council, who was chairman of the committee on streets and alleys, that he was ready, and by him had been informed, that he would have the proper bond prepared for him to execute. But before it was prepared and without previous notice the council rescinded this contract, because the bond was not given. They had no right to do so; and the city-council having given the contract to another person, the plaintiff below had a right, as he did, to sue them for this breach of their contract.

The real ground on which the city-council rescinded this contract was obviously not that the plaintiff below had failed to give the required bond, but because a majority of the council were of opinion that the gravel he would furnish to the city would be of an inferior quality, and that he could not be relied upon to perform his contract, and that trouble would probably result from their having made a contract with him. This of course was no ground for rescinding the contract, and the city-council based its action on a different ground. But on no legal ground, as we have seen.

It is claimed, that no actual damages were proven by this

breach of contract by the city, and that therefore the damages found by the jury were excessive, and that their verdict was based on a conjectural estimate of the profits, which might have been made, which is no legitimate basis upon which to fix the damages.   To sustain this the council for the city rely upon *Newbrough* v. *Walker*, 8 Gratt. 16.   This legal proposition is laid down in that case, and it is correct. But it seems to me to be inapplicable to the case before us. The contract in this case was for the delivery by the plaintiff below of one thousand yards of gravel to the city of Parkersburg, for which he was to get five hundred and ninety dollars.   He had received of the city of Parkersburg on this contract for gravel actually delivered forty-three dollars and thirty-six cents, leaving when the whole one thousand cubic yards of gravel should be delivered five hundred and forty-six dollars and sixty-four cents to be paid.   The plaintiff proved that under a like contract with the city of Parkersburg he had actually made a profit of twenty-five cents per cubic yard, that is, that the actual cost to him of delivering this gravel under a prior contract was thirty-four cents per cubic yard, and at this rate the cost of completing the delivery of this one thousand cubic feet of gravel would have been two hundred and ninety-six dollars and sixty-four cents, that is, the entire cost three hundred and forty dollars less the forty-three dollars and thirty-six cents.   Now if the jury had awarded two hundred and thirty-two dollars and twenty-five cents as the damages, which resulted from the breach of this contract, I do not see how the court could have set aside the verdict of the jury as based on a conjectural estimate of the profits, which might have been made on the contract, as was properly done in the case of *Newbrough* v. *Walker*, 8 Gratt. 16.   On the contrary in this case, it seems to me, there was no impropriety in the jury ascertaining the amount of damage the plaintiff below sustained in consequence of the breach of this contract by calculating what it would have cost him to perform his contract and taking that from what he was under the contract to . get for the delivery of this one thousand cubic yards of gravel.   In the absence of all other evidence as to what it would have cost I cannot see that the jury would have erred in judging that it would have cost as

much as it was proven that it had actually cost under a former contract to deliver the same amount of gravel to the city. If they had adopted this mode of estimating this damage, which I do not regard as a conjectural estimate of the plaintiff's damage, the jury might have allowed the plaintiff below as much as two hundred and thirty-two dollars and twenty-five cents, and the court would not have been justified in setting aside the verdict.

The jury however, on the ground, I presume, that the cost of the delivery of one thousand cubic feet of gravel had perhaps been exaggerated, this cost having been proven only by the plaintiff, thought proper to render for the plaintiff a verdict of only two hundred dollars.

It is insisted by the counsel for the plaintiff in error, that the jury ought not to have allowed the fifty dollars, the loss resulting from the sinking of one of the barges of gravel under the circumstances set out in the statement of the case, because the damages were sustained prior to July 26, 1881, when the contract was rescinded, and that under the cause of complaint set out in the summons no damages sustained prior to July 26, 1881, when the contract was rescinded, can be recovered. To sustain this position *James & Mitchell* v. *Adams*, 10 W. Va. 267–8, is relied on by the counsel of the city of Parkersburg. I deem it unnecessary to decide this point, as from what we have said we could not set aside this verdict and grant a new trial, even had there been no evidence before the jury in reference to the sinking of this barge of gravel or of the resulting damages of fifty dollars to the plaintiff below. We cannot say from the verdict that the jury in point of fact allowed to the plaintiff below anything because of the damage, which he sustained from the sinking of this barge. It may well be that this item of fifty dollars did not enter into their estimate of the plaintiff's damages.

For these reasons I am of opinion that the judgment of the circuit court of December 30, 1882, must be affirmed; and that the defendant in error, Martin Hare, must recover of the plaintiff in error his costs in this Court expended and damages according to law.

AFFIRMED.