# CHARLESTON.

## BEATTY LUMBER COMPANY *v.* WESTERN UNION TELEGRAPH COMPANY.

### Submitted January 28, 1903.   Decided March 14, 1903.

1. TELEGRAPH Co.—*Damages—Messages.*

    A condition on a blank telegraph message, providing that the "company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any unrepeated message beyond the amount received for sending the same," is not valid and effective to excuse the telegraph company from liability for total omission to send or deliver a message. (p. 411).

2. TELEGRAPH Co.—*Message—Damages.*

    A telegraphic message importing on its face a proposal to sell lumber is sufficient of itself to charge the telegraph company with notice of its importance, so as to call for prompt transmission and delivery. (p. 413).

3. TELEGRAPH Co.—*Compensatory Damages.*

    Compensatory damages cannot be recovered of a telegraph company for failure to send or deliver a mere proposal to sell lumber, as they are contingent upon its acceptance. (p. 414.)

4. TELEGRAPH Co.—*Damages—Messages.*

    In answer to a telegram to a lumber company asking whether it could furnish certain lumber and at what price, a reply telegram that it could furnish it at a certain price was delivered to a telegraph company for transmission, but was either never sent or never delivered. In an action for damages by the lumber company against the telegraph company the measure of damages is not the difference between the cost of the lumber de-

livered at the point of delivery and the fixed price, but the difference between such price and the market value of the lumber at the time when delivery would have been made, if the contract had been consummated.   (p. 417).

Writ of error and *supersedeas* to Circuit Court, Kanawha County.

Action by Beatty Lumber Company against The Western Union Telegraph Company.

Judgment for plaintiff, and defendant brings error.

*Reversed.*

PAYNE & PAYNE, BROWN, JACKSON & KNIGHT, for defendant in error.

SIMMS & ENSLOW, FLOURNOY, PRICE & SMITH, for plaintiff in error.

BRANNON, JUDGE:

Beatty Lumber Company brought action against the Western Union Telegraph Company in the circuit court of Kanawha County, and recovered verdict and judgment for one thousand, six hundred and eighty-four dollars and forty-five cents, for which judgment the telegraph company sued out the present writ of error. The claim for damages by the lumber company is predicated upon the fact that it delivered to the telegraph company at Glade Station a telegraphic message for transmission, to G. Elias & Bro., and that the telegraph company either negligently omitted to send, or to deliver the said message. G. Elias & Bro. had sent a dispatch requesting the lumber company to quote price on certain lumber, and the lumber company in response delivered to the telegraph company for transmission a reply message reading, "Can deliver the four-sixteen stringers at Buffalo in thirty days for twenty-one sixty per thousand feet. Commence shipping in five days. Beatty Lumber Company."

A question debated in this case is whether a condition written upon a blank message reading, "It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any unrepeated message beyond the amount received for sending the same," is valid, or void in

the eye of the law. This condition is found on all the blanks now used in telegraphy, coupled with a printed warning that it is safer, to guard against mistakes or delays, to have message repeated from the office of destination back to the originating office for comparison. The charge for this repetition is one-half the regular rate in addition to that rate. Whether such a condition is valid, has been the prolific source of elaborate and able discussion in England, and almost every one of the American states, and in the federal courts, and there is vast conflict of opinion between the courts upon the subject—many courts holding such conditions utterly void to exempt the company from liability, and others holding it valid, or partly valid. It is a well established rule that a common carrier cannot make any contract or stipulation with one dealing with it, by which it can screen itself from liability for loss arising from its negligence. This Court recognized this doctrine in *Brown* v. *Adams Express Company,* 15 W. Va. 812. It is because of that doctrine that so many courts stamp the above condition as void; but it must be said that the preponderance of authority holds such condition valid, certainly to the extent of excusing the company from loss for want of ordinary care. 2 Thomp. on Neg. (2d ed.) sec. 2422; 2 Sedwck. sec. 876. The subject is ably discussed in *Primrose* v. *Western Union Telegraph,* 154 U. S. 1, holding that clause valid to excuse from error in transmission of a cipher dispatch. I shall not elaborate the subject here for the reason that whether or not such a condition as to mere error in transmission, or delay in transmission, or delivery is valid, it certainly is not valid to excuse total failure to send or deliver a message. See not, 36 L. R. A. 711 for cases.

The condition above given excuses only for delay in transmission, and such a condition would surely not be widened to cover total failure to send a message. As to that clause excusing total failure to deliver, it can be said that even those courts which hold such a condition good as to mere error in transmission, recognize that it is not good to forgive a total failure to deliver, or to transmit. What has repetition of the message back from the office of destination to that of its origin to do with a total failure to send or deliver? This condition has no relevancy except as to such failure or error as might be cured by repetition; it is only to errors preventable by repetition that

such a condition logically applies. Repetition could not prevent either failure to send or failure to deliver. Thomp. on Negl. sec. 2424; Crosswell on Electricity, sec. 525, 527. All authorities hold a company liable for gross negligence, wilful misconduct or bad faith or fraud. 2 Thomp. on Negl., secs. 2411, 2423; Crosswell on Elec. sec. 510. The omission in this case is not one of mere inaccuracy in transmission, but either total failure to send or to deliver the message, and therefore we hold the clause no justification for omission of that character.

Another question debated in this case is, whether the dispatch above quoted furnished warning to the company of its important import, so as to call upon it for dilligence and care in prompt transmission and delivery. The law is, by the great weight of authority, that an enigmatical message, commonly called a cipher message,, or one which, though not such a message, is yet one so obscure that it is not intelligible to the telegraphic operator, does not render the company liable, in case of omission of the company to send or deliver, for full compensatory damages, but only for a nominal damage, that is, the amount paid by the sender. The reason is, there is nothing on the face of the dispatch to warn the company of the importance of the message and to spur it to dilligence, and thus we cannot say that the parties contemplated any special damage from the omission of that duty required of the telegraph company by law. 2 Thomp. on Negl. secs. 2469, 2472: Crosswell on Elec. sec. 609. This subject was fully discussed in *Primrose* v. *Western Union Telegraph Company,* 154 U. S. 1, and it was held that a cipher or obscure message will render a company liable to only nominal damage in case of default. I venture to say that this position is very doubtful, notwithstanding that I concede that it is law upon a preponderance of authority.

It would seem that a telegraph company receiving a message ought to presume, without information conveyed by the telegram or otherwise, that it is important and that damage may ensue from its failure of duty. What right has it to ask whether it is important or not? Crosswell on Elec. sec. 574. In the present case the message is plainly a commercial one. It plainly imports that it was an answer to an inquiry as to lumber, and that it proposed to sell and deliver lumber. Such a message affords no excuse or omission of duty by a telegraph company.

But the trouble facing the plaintiff in this case, is, that there was no finished contract between the parties, but only a proposal for a contract, and there can be no contract without both a proposal and its acceptance. The failure of the telegraph company did not cause the breach of a consummate contract. It only prevented one that might or might not have been made. Where one sends a dispatch to buy an article, and the dispatch is not sent, and the price of that article rises, or a dispatch to sell an article, and the price falls, we can see a ground for damage proximately traceable to the omission to send the dispatch. So we can where there is a subsisting contract, and the failure of the telegraph company causes a breach of that contract. In this case, however, we can only guess or surmise that there would have been a binding contract had the dispatch been sent. In order to give compensatory damages we have to surmise and conjecture, only surmise and conjecture, that had the message been sent, there would have been an acceptance of the proposal which it made. To give compensatory damages there must be actual loss, and the court must see that it comes from the wrongful act of the defendant; that but for such act, there would not have been a loss. "Compensatory damages are such as measure the actual loss, and are given as amends therefor." *Talbott* v. *Railroad,* 42 W. Va. 560. Therefore, we must be able to say with legal certainty that if that telegram had been delivered, there would have been an actual contract; for if a contract had not ensued, the company would clearly not be liable. We everywhere come across the rule that damages must not be contingent and conjectural. I do not here mean a conjectural process of fixing the mere amount of damages; but I mean that we cannot fix damages upon a party as guilty of wrong upon a cause or basis resting on a contingency, upon an event that might, or might not, have happened. We cannot say that the proposal of the lumber company would have been accepted.

"Speculative Loss. The plaintiff must of course prove that the loss for which he seeks compensation would have happened; compensation will not be given for mere conjectural consequences. In *Hibbard* v. *W. U. Tel. Co.,* a telegram was sent by Hibbard to his agent directing him to buy goods at a certain price deliverable in June at the seller's option. The message was not delivered, and the price the next day went up; after

that it went down, and continued below the price mentioned in the telegram until after the period fixed for delivery. The agent did not buy the goods. It was held that only nominal damages could be recovered, as the plaintiff could only have made profit by selling the day after the purchase was made, and it was impossible to say that he would have done this—it depended upon too many contingencies. So where the plaintiff telegraphed to a broker to buy oil on a margin, and the message was not delivered, it was held that the loss of the plaintiff was too uncertain for compensation, though the price of oil afterwards fluctuated. Where the plaintiff, an undertaker, failed to receive a message, "Meet me at the depot prepared to arrange for shipment to I. of my mother-in-law's remains," it was held that since he lost only the possibility of making a profit, he could not recover. In *Western U. Tel. Co.* v. *Connelly,* a message to the plaintiff in these words, "If you want a place, come first train," was delayed; and upon going to the place the plaintiff found himself too late. It was held that he might recover compensation for his time and expenses in going to the place, but that loss from failure to secure employment was too conjectural." This authority from 2 Sedgw. on Dam. sec. 888, seems applicable to this case. So does sec. 889, where we find this: "In many cases where a telegram is delayed or not delivered it is impossible to prove that a bargain has been lost, because it does not appear that, had the message been duly transmitted, an actual gain would have ensued. The whole subject has been recently reviewed in its bearing on the contracts of telegraph companies by the Supreme Court of the United States. In *Western U. Tel. Co.* v. *Hall* (124 U. S. 444, 454), the message was: "Buy ten thousand, if you think it safe. Wire me." The message meant that the person to whom it was addressed should buy ten thousand barrels of petroleum, if he thought it safe. Had it been delivered in time, the purchase would have been made at one dollar and seventeen cents per barrel. On the delivery of the dispatch the price had risen to one dollar and thirty-five cents, and no purchase was made. The court held that the plaintiff could recover only nominal damages." The opinion says that the only theory on which the plaintiff could show actual loss was on the supposition that if he had bought on the 9th of November, he might and would have sold

on the 10th; that it was clear that in point of fact the plaintiff had suffered no actual loss, as no transaction was in fact made, and all that could be said to have been lost was the opportunity of buying on the 9th, and of making profit by selling on the 10th, the sale on that day being purely contingent.

In *Johnson* v. *W. U. Tel. Co.,* 29 So. 787, we find the law thus stated:· "The damages for failure to deliver a· telegram are too remote and uncertain to admit of recovery, where, if it had been received, it only gave plaintiff an opportunity to make a contract for railroad construction, which he might or might not have made, the profits on which, if made, would have been subject to several contingencies." We find·in 45 Am. R. 496, a report or reference to the case of *McCaul* v. *Western U. Tel. Co* in which a man sent dispatch as follows: "Can close Valkyrie and others, 22, 20 net, Montreal. Answer immediately." Held, that commissions which the sender would have earned as broker in affecting a charter of the two vessels, if the message had been duly sent, were not damages either actually contemplated, or to be fairly supposed to have been contemplated·by the defendant, and therefore not recoverable. The court said that however strongly the plaintiff may have felt assured, acting as a broker, that the offer telegraphed to his principal would be accepted, and that he would get his commission, yet there was nothing in the case placing these contingencies, in themselves uncertain and remote within the contemplation. The court said that the claim of the plaintiff was for a special and contingent loss. In *Smith* v. *Western U. Tel. Co.,* 83 Ky. 104, a party had bought stock of a New York broker and had a deposit with him, and the broker was not to sell the stock except in the event it so declined that its value, with the deposit made by the party, did not equal the amount paid therefor. A telegram was addressed to the purchaser in Kentucky by the broker notifying him of the purchase of stock, but was never delivered. ·The stock declined and the broker sold the stock. Soon such stock increased. In an action against the company the jury found that if the purchaser had received the telegram, he would have ordered the stock sold when stocks first began to decline, of which he had notice, and thus have saved a large amount.· It was held that he could only recover the cost of the message, and that the special verdict that the person might have sold had no

affect; that "what a person might or would have done is not the proper subject of a special finding, and such a finding, though not objected to, will not be considered." In *North American Trans. Co.,* 178 U. S. 262, in an action against the common carrier, a railroad company, for damages for failure to get employment, or contracts by which the party could have made profit, which damages were alleged to flow from a failure to make railroad connection, it was held there could be no recovery because the contracts as well as profits which the plaintiff suggested he might have made, had he reached Dawson City, were contingent and uncertain.

The case of *Manville* v. *Tel. Co.,* 37 Ia. 218, is cited for the appellee. There the message was, "Ship your hogs at once." That was the last dispatch to make a bargain. Failure to send it prevented an actual sale. There was nothing contingent in that. It was not a mere proposal, which might or might not have been accepted. So in *Thompson* v. *Tel. Co.,* 64 Wis. 541. The dispatch read: "Send the horse today. Mock loads tonight." The failure there lost actual sale. It was not a mere contingency. In *W. U. Tel. Co.* v. *Brown,* 84 Texas 54, there was a failure to send a dispatch by agent to principal telling him that he had bought mules, which the principal could sell, which failure caused the loss of an actual sale, which the plaintiff had already made. There was no contingency or uncertainty. So in *Hare* v. *Parkersburg,* 24 W. Va. 554, there was an actual contract by which the city purchased gravel of Hare, and after he had delivered a part of it the city rescinded the contract. Where was there any contingency about that? An actual contract broken and the loss certain ascertainable. Our conclusion therefore is, that as we cannot, with legal certainty, say that a contract would have come into existence if the dispatch had been received, we cannot assert or find that any actual loss was inflicted upon the plaintiff, and therefore the recovery of compensatory damages was improper in the case. It is well settled that the bare infringment of a right, or the bare breach of a contract, though not accompanied by actual damage, gives right to recovery of nominal damages; but for compensatory damages there must be actual, substantial, measurable loss. 1 Sedwck. on Dam. sec. 98.

In this opinion I have assumed that the profits which the plaintiff claims it could have made by the difference in the esti-

mated cost of production of the lumber and the price which it was to receive for it, is not conjectural or contingent, or speculative. Such damages have often been denied by our courts. *Newbrough* v. *Walker,* 8 Grat. 16; *Bodkin* v. *Arnold,* 48 W. Va. 108; *Jones* v. *Adams,* 8 W. Va. 568; *Hare* v. *Parkersburg,* 24 *Id.* 554. But as just stated I have granted that such profits, if there had been a contract, would be ascertainable with legal certainty.

To repel the argument that the acceptance of the proposals to sell in this case was uncertain and contingent, we are told that Elias stated as a witness that his firm would have accepted that proposal, if it had been received. This will not prove the fact. That evidence does not make the fact certain. The opinion of this witness months afterwards cannot go to that length. In *McCaul* v. *W. U. Tel. Co.,* cited, the party to whom the telegram was addressed said that he would have accepted its proposal; but the court said this did not change the nature of the matter. So in *Smith* v. *W. U. Tel. Co.,* cited, the jury found that if the telegram had been received the party would have sold his stock; but the court said: "What a person might or would have done in a certain event is not the proper subject of a special finding, and will not be considered."·

The measure of damages has been hotly contested in this case, as well as the matter last considered. In view of what has been said as to contingent damages above, it may not be important to discuss the measure of damages, but it arises on the record. The plaintiff says that the measure is the difference between what the lumber would have cost it delivered at Buffalo, and the price which its telegram proposed, and upon this basis the jury fixed the amount of damages. It was proven in the case that from the date when this lumber would have been delivered, as the plaintiff claims, lumber increased constantly in value and was much higher at the time of the suit brought than then. The plaintiff did not have the lumber on its hands already manufactured, but intended to manufacture it from its timber then yet standing. The company did not loose one cent from labor done in executing a contract. We hold that under the evidence the company lost nothing for the reason that its timber was worth more afterwards than at that time, and has ever since continued so, and that it could at any time have converted the

timber into lumber and realized more money from it than it could have realized if it had consummated the contract. In short, the failure of the telegram to reach its destination, in all human probability, made money for the plaintiff. Certain it is that the plaintiff could have used its timber and its saw-mill in manufacturing the timber into lumber and made money over what Elias & Bro would have paid. Suppose the telegram had been received and its proposal accepted, and then Elias & Bro had afterwards countermanded the order before the plaintiff had done any work. What damages could the plaintiff have recovered from them? Only nominal damages, as the plaintiff lost nothing thereby, as its timber was worth more than ever and was convertable into lumber, which would have brought just as much as the price agreed and more. Now, did not the failure of the telegraph company place the plaintiff in pra tically the same condition as it would have been, if Elias & Bro. had made the order and then countermanded it. It seems to me that this case assimilates itself to the law which upon the sale of chattels the vendee breaks the contract by a refusal to accept the goods. If the plaintiff had gotten out the lumber and had been refused acceptance, it would have been in the same fix it actually was in save the expenditure of labor. Where a vendee refuses to accept the goods, and the vendor retains them as his property, the measure of damages in a suit by the vendor against the vendee, "Where the title is not passed is the difference between the contract and market price of the article at the time when and the place where it should have been accepted." 2 Sedwck. on Dam. sec. 753. In the leading case of *Masterdon* v. *Mayor,* 7 Hill 61, commented upon in 1 Sutherl. on Damages, sec. 64, this doctrine that the measure of damages is the difference between the market value of the refused article, if an article of value, and contract price is approved. Therefore, if that lumber would have brought in the market at Buffalo, at the time when it would have been delivered, as much as the figures named by the plaintiff in its lost telegram, it could recover only nominal damages, because it lost nothing. Or if it could have so manufactured that timber into that kind of lumber, or any lumber, within a reasonable time after the date of the lost dis- patch, then it can recover only nominal damages, because it could not have lost anything from the telegraph company's fault.

Under these principles it follows that the plaintiff's instruction 1 telling the jury that the plaintiff was entitled to recover the difference between the price for the lumber proposed in its lost dispatch and the sum or amount it would have cost the plaintiff delivered at Buffalo was erroneous. The defendant's instruction that the plaintiff could recover only the amount paid for the lost message was correct and should have been given. The court should have given defendant's instruction 3, that as there was no contract, no profits could be recovered, and also No. 4, saying that recovery of profits between cost of production and the price proposed could not be allowed. The court properly refused defendant's instruction 5, telling the jury that if the plaintiff did not request to have the message repeated, and did not pay for repeating it, there could be no recovery. For these reasons we reverse the judgment, set aside the verdict, grant a new trial, and remand the case to the circuit court.

*Reversed.*