————O————

## No. 3948.

### (Court of Appeal, Parish of Orleans.)

### STEWART CARNAL CO. LTD.. vs. THE POSTAL TELEGRAPH CABLE CO.

1. Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive, in respect of such breach of contract, should be such as may fairly and reasonably be considerd either arising naturally, i. e., according to the usual course of things, from such

breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of its breach.

2. It is obvious that the language of a telegram which is wholly unintelligible to persons generally, to the operator, to the trade in general and only understood by the parties themselves, conveys no information whatever to the Telegraph Company of the transaction to which it relates or the consequences likely to follow from negligence in its transmission or delivery, and it cannot, therefore, be assumed that any amount of damages or any pecuniary loss will naturally ensue or be suffered according to the usual course of things from the failure to transmit or error in the transmission of the message.

Appeal from Civil District Court, Division "E."

Buck, Walshe & Buck, for Plaintiff and Appellant.

Dufour & Dufour, for Defendant and Appellee.

MOORE, J. This was a suit for the recovery of consequential damages alleged to have beeen occasioned plaintiff as the result of an error in the transmission over the defendant's wires of a telegram sent by plaintiff's agent in Marshalltown, Iowa, to plaintiffs who reside in New Orleans.

The allegations of the petition are, substantially, that plaintiffs being engaged in the business of Importers and Jobbers of Coffee, Tea, etc., did business through an agent, E. G. Beeson, in the town of Marshallton, Iowa; that they sent to said Beeson, their agent, samples of a certain lot of coffee consisting of 250 bags, with instructions that same was for sale at the price of 7½ cents per pound; that on the 25th February, 1904, petitioners received from said Beeson, through the defendant company, a telegraphic message in the words and figures following: "February 25th, 190—, Stewart Carnal & Co., New Orleans, La. Spencer say all five seventy-one cash less two per cent ten days hold what code used. Signed, E. G. Beeson." That petitioners "interpreting said telegram in connection with the written instructions theretofore given, understood it to mean and say that the coffee which in description tallies with the 250 bags hereinbefore described had been sold at the price named, to-wit, 7½ cents and accordingly immediately confirmed the sale and shipped the coffee;" that subsequently it developed that the message sent by Beeson was erroneously transmitted and de-

livered; "that the word *'say'* as reported should have been *'six,'* meaning that there was an offer to sell the coffee at six cents per pound;" that before the error could be corrected the sale of the coffee had been consummated, the shipment made and could not be recalled, that therefore by reason of said error plaintiffs' loss was 1 1.2 cents per pound on the coffee, its market value then being 7 1.2 cents, aggregating the sum of $489.55, for which judgment is prayed.

The answer admits the error in the transmission and delivery of the telegram but denies liability for the following reasons: That the message was accepted for transmission and delivery subject to the condition among others, that the respondent would not be liable for error in cipher or obscure messages; that said message was obscure and in unintelligible language, that the damages which plaintiff is alleged to have suffered in consepuence of said error was not in contemplation of the parties at the time said message was filed and accepted for transmission and delivery; that plaintiffs are guilty of negligence and contributed to the loss and damage claimed to have been suffered in this, that plaintiff, its officers and agents, should have known from the text and wording of said telegram, as received, that an error had been made and that plaintiff, its officers and agents, should have exercised due diligence and taken necessary steps and precaution to ascertain whether said telegram had been correctly transmitted; that Beeson the agent of plaintiff at Marshallton, Iowa, was likewise guilty of negligence and contributed to the loss and damage, in this that in reply to the telegram sent by Beeson to plaintiff and erroneously transmitted, plaintiff wired said Beeson, as follows: "We confirm Spencer. Try to move five seventy . Market better." And that said agent of plaintiff knew or ought to have known, upon receipt of this telegram, that some error or mistake had been made, for the reason that the latter telegram received by him purported to confirm a transaction which he had made, whereas in fact, as he well knew, he had wired to the plaintiff an offer for the coffee at a price much less than that at which he was originally authorized to sell same, and for the further reason that although the telegram by him sent contained, as understood by him, an offer for the coffee at a price one and one-half cents less than that at which he was originally authorized to sell it, still the confirmatory telegram so received suggested that

he try to move five seventy, which meant a certain other lot of coffee, as respondent subsequently discovered, at the price originally quoted, and advising him that the market was better; that plaintiff's agent therefore in the face of the notice and warning contained in the answer by him received that the market was better and that he should try to move the coffee designated as five seventy at the price originally quoted, knew or ought to have known, that the offer made by him in the telegram erroneously transmitted could not have been properly delivered to, or understood by the plaintiff; that plaintiff's said agent should have used due diligence in ascertaining whether any mistake or erro rhad been made, and that plaintiff is responsible for the negligence and contributory negligence of its said agent in the premises.

There was judgment rejecting the plaintiff's demand and from this judgment it prosecutes this appeal.

The facts are that on the 20th February, 1904, plaintiff wrote to its agent Beeson at Marshallton, Iowa, as follows:

"Your valued favor of the 17th inst duly at hand.

"We note that you have a customer in the market for Rios 8,s and 9,s. We are sending you a few special samples of coffee which we are now unloading. We are making you special prices on these chops and this is the very best that we can do, and if you cannot get the business on this basis we will have to pass it up, as we can sell these goods readily on this market at the prices we are naming you, but we are anxious to have you get a start, and we hope that you will be able to close out these lots."

Annexed to this letter was the following document: "Copy of our quotations of coffee to our broker, E. G. Beeson, Marshallton, Iowa. February 23rd, 1904.

### COFFEE.

"571 at 7 1-2, ............................... 250 bags
"570 at 7 7-8, ............................... 140 bags

On the 25th February, 1904, Beeson delivered to the defendant company at Marshalltown, a message addressed to plaintiff and signed by Beeson, as follows: "Spencer six all five seventy-one cash less two per cent ten days hold what code used."

This message was written on one of the forms of the de-

197

fendant company and contained the stipulations that the company shall not be responsible for "errors in cipher or obscure messages."

As delivered to plaintiff the message read: "Spencer say all five seventy-one cash less two per cent ten days hold what code used," the error being that the word "six" was substituted by the word "say."

To this the plaintiff wired reply to Beeson as follows: "We confirm Spencer. Try to move seventy market better," having "interpreted" Beeson's message to mean that the entire lot No. 571 of two hundred and fifty bags coffee had been sold to the Spencer Letts Coffee Company at seven and one half cents.

This lot of coffee was therefore shipped to the Spencer Letts Company and it was accordingly billed therefor at seven and 1-2 cents.

On the 24th February, 1904, plaintiff wrote to Beeson that it had wired "Confirmation of sale of 250 bags 571 at 7 1-2" and that it was "making shipment accordingly." On receipt of this letter Beeson at once discovered that his message had been misunderstood and on the 28th February, 1904, he wrote plaintiff that "there must be some mistake." "My offer," he continued, "was as follows: 'Spencer six all five seventy-one cash less two per cent ten days hold what code used.' The coffee was sold at 6 cents and I trust you understood it that way, 7 1-2 would be away out of reason on 571 as I was offered sevens at 7 cents same day. Awaiting your answer which I trust will right the matter I am, etc."

It does not appear by the record whether any answer to this letter was sent, or, if sent, was received by Beeson.

At any rate the evidence of the plaintiff's president the only witness who testified in the cause for either side, is to the effect that plaintiff was informed of the error too late to recall the shipment.

It is shown that the coffee was worth in the New Orleans market at the time of sale 7 1-2 cents; that Spencer Letts paid but 6 cents for it and that consequently plaintiff's loss on the transaction was the sum of 489.55/100 as claimed.

The message delivered to the defendant company by Beeson is, on its face, absolutely meaningless and conveys to the mind

of one—save the initiated—its meaning, purport, nature and importance.

What information Beeson intended to convey to plaintiff by the message and what plaintiff would necessarily have understood the message to mean had it been delivered as written by Beeson, can be learned by us by the proof alone. The only evidence in the record tending to show that by the words "Spencer Six," Beeson meant to convey the information to plaintiff that Spencer had offered Beeson six cents for "all five seventy-one," which latter we also learn is a lot number adopted by plaintiff to indicate, or indentify a certain 250 bags of coffee on hand—is the statement in his letter to plaintiff of the 28th February, *supra,* to the effect that the "Coffee was sold at six cents and I trust you understood it that way," but there is not a scintilla of evidence to show that had the message been delivered to plaintiff as sent by Beeson the former would have so understood it.

Neither is there any evidence to show that the terms used in the message as written had any clear and well-defined meaning in the trade in which they were used or that they were abbreviations of any trade terms. Nor is there any evidence to show that defendant's agent to whom the message was delivered by Beeson, krew or had reason to know, either because of prior dealings with the parties, or by knowledge of the character of their business or by any other means, that the message had refernce to an offer to buy or sell coffee or any other commodity, or that it related to a business matter of importance, or that a pecuniary loss might result from an incorrect or delayed transmission. .

This becomes important in view of the well-established rule that where the message as delivered for transmission is in cipher and unintelligible except to the sender and addressee, and the Company had no information otherwise as to its character or purport, nor of its importance and urgency, the party injured can recover nothing more than nominal damages, which is the amount he may have paid for sending the message.

This rule is analogous to and derives support from the principle of law relating to common carriers which exempt the carriers from liability in cases where the shipper conceals the nature and value of his goods; and the reason for the rule is that

such damages could not have enterd into contemplation of the parties at the time the contract was entered into.

In the leading case of Hadley vs. Baxendale 9 Exch., 345, Baron Alderson announced the principle which underlies this rule in these words:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive, in respect of such breach of contract, should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of its breach," and it finds expression in Article 1934 of our own code as follows:

"When a debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. By bad faith, in this and the next rule, is not meant the mere breach of faith in not complying with the contract, but a designed breach of it from some motive of ill-will."

"The law is," says Thompson on Negligence Vol. 11, 2469-2472, "by the great weight of authority, that an enigmatical message, commonly a cipher message, is one which though not such a message is yet one so obscure that it is not intelligible to the Telegraphic operator, does not render the company liable, in case of omission of the company to send or deliver, for full compensatory damages, but only for nominal damages, that is the amount paid by the sender."

"The reason is that there is nothing on the face of the dispatch to warn the company of the importance of the message and to spur it to diligence, and there we cannot say that the parties contemplated any special damages from omission of that duty required of the telegraph company."

The subject was fully discussed in Primrose vs. Western Union Telegraph Company 154 U. S. 1, and it was held that a cipher or obscure message will render the company liable to only nominal damages, that is the refunding of the amount it received for the message, in case of default.

In the latter case the Court said "Unless the message shows on its face the importance of the matter to which it relates, or information on these points is communicated to the company's agent, only nominal damages can be recovered for the default of the company;" and again: "If the sender of a cipher message does not inform the company of the nature of the transaction to which it relates, or what might happen if it were not correctly transmitted, he can recover only the amount paid for sending it, in case of a mistake in its transmission or delivery."

"Where the message affords the only evidence of its importance and the message is unintelligible or fails to disclose to the company its nature or importance, there is no question as to the application of the rule (just stated) with respect to cipher messages."

A and E Ency. of Law, Vol. 27, page 1063, see also Jovite Cau vs. Postal, etc., Co. No. 3721, and Macheca Bros. vs. Ibid No. 1591, our docket.

It is contended by the learned counsel for plaintiff and appellant that the message in the instant case is not in "cipher" and that neither is it "obscure."

"Cipher" is defined to be "a secret or disguised manner of writing, whether by means of an arbitrary use of characters or combinations understood only by the parties concerned, or by a conventional significance attached to words conveying a different meaning to one not in the secret." Century Dic Verbo "Cipher," "A cipher dispatch, as used in a condition limiting the liability of a telegraph company in such cases, is a message in which words are used to mean things entirely variant from their meaning in the language as they are ordinarily used." Pepper vs. Western Union etc., Co. 37 Tenn. 554, (11 S. W. 783-4.)

If the combination of words; "Spencer six all five seventy-one cash less two per cent ten days hold what code used," does not fall within the definition above given of a cipher message, it can be only because the words have no conventional significance attached to them and that they are understood not only by the persons concerned, but, if not by all persons familiar with the language in which they are written, at least by those engaged in the trade in which the words have a technical trade significance.

On its face the message was conveyed in terms which, so far as the record shows, was simply nonsense to the defendant, and it is clearly unintelligible to even one familiar with the language in which it is written, for it conveys a hidden meaning, one not even familiar to the trade, for as we have shown, the words: "five seventy-one" is not a trade term, but one of "conventional significance" adopted by the persons concerned to indicate a certain particular lot of coffee held by plaintiff.

But whether, technically, the message is a "cipher message" or an "enigmatical message," which latter is defined to be "a message which, though not a cipher message, is yet so obscure that it is not intelligible to the telegraph operator." Beatty Lumber Company vs. Western Union etc., Company 44 S. E. 309-10, it is certainly obscure and unintelligible and was evidently intended to be so in order that the defendant's agent might not know its nature and purpose.

In either event it falls under the operation of the rule stated, *supra*.

We are not unmindful of the fact that a large class of cases hold that when the message, though couched in unusual or technical trade language, is sufficiently plain to indicate that it is of importance, or to apprise the company that a pecuniary loss may, and probably will, result from an incorrect or delayed transmission there is no such obscurity as will confine its liability to nominal damages.

But in the instant case, as we have already stated, there is no proof whatsoever that the message contains any *technical trade language,* which indicates that it is of importance or apprises the company that a loss may follow error.

There is not a word or any combination of words in the message which is shown to be a technical trade term, known either in the coffee trade or in any other trade. "Spencer six all five seventy-one" are not technical trade terms. No one, whether in the coffee trade or in any other trade, could possibly understand its meaning. The sender and the addressee alone knew that "five seventy-one" referred to a particular lot of coffee owned by plaintiff. The sender *alone,* so far as the record shows, knew what was intended by "Spencer six all," for there is no evidence to show that plaintiff would have understood that "Spencer six all" meant that "Spencer offered six cents

for all of" the coffee with the lot number five seventy-one, nor can we infer that it would have so understood it especially as plaintiff had notified Beeson in its letter of the 20th of February supra, that if he, Beeson, could not sell this lot of coffee at seven and one half cents to "pass it up" which the president of plaintiff's company testifies means to "pass the business up."

In all the cases cited by appellant technical trade terms were used, the *meaning of which was established by evidence showing that they were well understood in the particular trade in which they were used,* and the rule supra was held, therefore, not to apply.

But it is obvious that the language of a telegram which is wholly unintelligible to persons generally, to the operator, to the trade in general and only understood by the parties themselves, conveys no information whatever to the telegraph company of the transaction to which it relates, or the consequences likely to flow from negligence in its transmission or delivery, and it cannot, therefore, be assumed that any amount of damages or any pecuniary loss or injury will naturally ensue or be suffered according to the usual course of things from the failure to transmit or error in the transmission of the message.

Ignorant of its real nature and importance, it cannot be said to have been in contemplation at the time of making the contract that any particular damage would be the probable result of a breach of the contract on its part.

As the message in the instant case was meaningless to the company's operator and furnished no information as to the nature and extent of the business to which it related, whether it was an order to buy or sell coffee or any other commodity, whether it contained advices as to the state of the market or whatever else its real import was, it would be absurd to claim that the company had in contemplation at the time of transmitting it, damages for a loss on the sale of 250 bags of coffee as a probable result of a breach of its contract.

The Judgment appealed from is affirmed.

March 11th, 1907.

Rehearing refused April 22, 1907.

Writ refused by Supreme Court May 15, 1907.