E. F. O'DELL *et al., partners, etc.* v. CRISS & SHAVER, *Inc.*

(No. 9149)

Submitted April 15, 1941. Decided May 13, 1941.

*Poffenbarger & Poffenbarger,* for plaintiff in error.
*Kay, Casto & Amos,* for defendants in error.

RILEY, JUDGE:

Criss & Shaver, Inc., a corporation, prosecutes this writ of error to a judgment of the Circuit Court of Kanawha County, rendered in a certain action of assumpsit, wherein E. F. O'Dell and Basil O'Dell, partners, etc., were plaintiffs, and said corporation was defendant.

Recovery is sought on the theory that defendant had breached a verbal contract, whereby the latter agreed to pay plaintiffs forty-three cents per batch for the haulage in plaintiffs' trucks of batches of mixed concrete materials from defendant's plant in Charleston to Stellhorn & Beightler, paving contractors on the Kanawha Boulevard paving project in the City of Charleston, in such quantities and at such times as needed by the contractors. The breach pleaded and sought to be proved is the refusal of defendant's employees to load plaintiffs' trucks. Plaintiffs claim as damages: (1) the amount of $109.20 paid their drivers for three days they remained at defendant's plant ready to perform; (2) the amount of $395.93 re-

quired to put plaintiffs' trucks in readiness for the work by the installation of special equipment; and (3) $769.21, the estimated profit of thirteen cents per batch for 5,919 batches, the number actually delivered by defendant to the paving contractors.

Defendant sought to avoid the effect of its contract on the theory: first, that subsequent to the making thereof a contingency or event arose, not within the contemplation of the parties at the time of making the contract nor reasonably foreseen; and, second, plaintiff had no right to recover on any of the several items of damages declared on.

The jury returned a verdict in plaintiff's favor in the amount of $988.60 made up, as appears from the answer to an interrogatory submitted by defendant, of two items: $591.90 for profits and $396.70 for expenses.

Because we are simply appraising a jury's verdict on a trial court's refusal to sustain a motion to set aside the verdict and grant a new trial, we apply the rule in *Fielder* v. *Service Cab Co.*, 122 W. Va. 522, 11 S. E. (2d) 115, and draw every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, and assume as true those facts which the jury could properly have found under the evidence. So in the statement of the facts in this case, where the evidence conflicts, only those facts will be assumed and stated in this opinion which are favorable to plaintiffs' theory of recovery.

In December, 1938, defendant, who at that time had the contract for the delivery of the cement mix to Stellhorn & Beightler, upon call, entered into the contract upon which this action is based. At the time the instant contract was made, defendant's employees were not unionized. However, in March, 1939, defendant had signed an agreement with union officials, providing for the unionization of its plant. In order to carry out their contract, plaintiffs had equipped seven trucks with batch gates and straightened the bodies, which was done especially for the performance of the contract, and would not have been required had the contract not been made. On May

15, 1939, following defendant's instructions, plaintiffs placed the seven trucks at defendant's plant in readiness to perform their part of the contract. At that time the O'Dells' truck drivers were not members of the union, and for this reason defendant's crane operator refused to load the trucks, which during the two days following were kept at the plant. On the third day, defendant's employees began loading trucks other than those of the plaintiffs. This, plaintiffs claim, constituted a breach of the contract.

Under a special plea, evidence was introduced tending to show that after the instant contract had been made, the defendant, acting under pressure exerted by union officials, and in order to avoid the inconvenience and difficulty that might ensue through maintenance of picket lines around its plant, had become unionized; that industries generally through the Kanawha Valley had already been unionized; and that, as a result of its agreement with the union, defendant's employees were inhibited from loading plaintiffs' trucks in the performance of the hauling contract upon which this action has been brought. From newspaper reports, and in general from union activities throughout the Kanawha Valley, plaintiffs contend defendant knew, or should have known, that because the O'Dell employees were not members of the union, it could not participate in the business of doing any hauling for defendant. Whether this situation created a supervening impossibility which could have been foreseen at the time the contract was made, was fully presented to the jury under instructions of the court. It, however, is quite difficult for us to find any impossibility of performance in the situation created by the unionization of defendant's plant. At most that situation created merely a difficulty which, whether anticipated or not by the parties, does not furnish an excuse for non-performance. Generally, an unanticipated difficulty does not furnish such an excuse. 2 Restatement of the Law, Contracts, Sec. 467, and the West Virginia Annotations prepared by Robert T. Donley; 12 Am. Jur., Contracts, Sec. 362. Though not directly in point, see also: *McCormick* v. *Jordon,* 65

W. Va. 86, Pt. 4 Syl., 63 S. E. 778, 779; *Pittsburgh & West Virginia Gas Co.* v. *Nicholson,* 87 W. Va. 540, 105 S. E. 784, 12 A. L. R. 1392; *Holdred Collieries of West Virginia* v. *Boone County Coal Corp.,* 97 W. Va. 109, 124 S. E. 493; and *Rice & Co.* v. *Roberts,* 114 W. Va. 549, 172 S. E. 615.

On the question of damages defendant's counsel take the successive positions, first, that plaintiffs are entitled to recover neither for equipment expense nor loss of profits; second, that no recovery can be had for loss of profits; and, third, that in the estimation of profits plaintiffs did not take into consideration the cost of the special equipment to the trucks. For convenience we shall discuss these positions *seriatim.*

The record, we think, fully justifies the inclusion of the equipment cost as an item of damages. It shows that the use of batch gates became necessary only because of plaintiffs' endeavor to perform the contract. In fact, both O'Dells testified that if the contract had not been made, the special equipment would not have been installed. Under the circumstances this cost is an expense necessarily incident to the work to be done and was properly recoverable in this action. But counsel say that plaintiffs are not entitled to recover both equipment expense and profits. Assuming for the moment that profits were properly proved, we think plaintiffs are entitled to have such item considered in assessing damages, under the holding in *Berry* v. *Huntington Masonic Temple Association,* 80 W. Va. 342, 93 S. E. 355, Pt. 5 Syl., to the effect that, in an action for a breach of contract for work to be performed, a contractor, who is prevented from completing the work by the other party, may recover not only the value of labor and materials bestowed and expenses necessarily incident to the work to be done, but also such profits as he would have made, if permitted to complete the contract. Counsel suggest that the *Berry* case does not raise the exact question in issue, but if it does the decision is "plainly unreasonable and erroneous." Be that as it may, we think the *Berry* case is sound and sufficiently analogous to the instant case to justify plaintiffs' position that they are entitled to recover under a jury verdict both the

equipment expense, and any profits which, the evidence shows, they would have received had the work been completed. Of course, by "profits" is meant net profits, and the *Berry* case should be construed to hold that the profits referred to in the syllabus and opinion must not be more than the excess, if any, of the contract price over the value of labor and materials bestowed in furtherance of the work and expense necessarily incident to the work done and to be done.

In support of defendant's second position on the question of damages, counsel say that plaintiffs' evidence of profits is insufficient in that it consists only of the opinion of E. F. O'Dell, who did not make an estimate, and the opinion of Basil O'Dell, who made an estimate before the work began. The cases of *James & Mitchell* v. *Adams*, 8 W. Va. 568, and *Hare* v. *Parkersburg*, 24 W. Va. 554, are cited in support of this position. In the former case the plaintiff sought in an action based upon a contract for the sale of merchandise to establish damages which were purely speculative and conjectural. In *Hare* v. *Parkersburg*, the Court held that in an action for a breach of contract, whereby plaintiff agreed to deliver a certain quantity of gravel, but was prevented by defendant's improper cancellation of the contract, profits were recoverable by subtracting from the price to be paid for the gravel when delivered, the cost to the plaintiff of delivering this quantity of gravel. True, the Court said that the jury may consider the actual cost of delivery for a like quantity of gravel by the plaintiff to the defendant under a previous and similar contract (the names of plaintiff and defendant are transposed in the latter part of the syllabus). The *Hare* case, however, does not stand for the proposition that the cost of work to be done under a contract can be proved only by the cost of work done under a previous and similar contract. It simply holds that such evidence is admissible.

The record amply sustains plaintiffs' position that they incurred a loss of profits by defendant's breach of the contract. We, however, find merit in defendant's suggestion that the verdict embraces "double" damages in

that it contains an item of damages for the special equipment, and an item for profits which were estimated without including in the cost of performance the item for the special equipment. In this regard, let us for a moment consider Basil O'Dell's testimony, because he actually made an estimate for the work and calculated the claimed profits. E. F. O'Dell, Basil O'Dell's father, disqualified himself expressly on direct examination. Under the circumstances the jury was entitled to disregard, as it evidently did, his damaging statements on cross-examination. Basil, who qualified himself as an experienced estimator, gave an estimated profit of thirteen cents a batch, and testified that each of the trucks assigned to the work would have hauled on an average five batches per hour. On the basis of 5,919 batches, the number actually delivered by the defendant to the paving contractor, it would take 1,183.8 hauling hours to complete the contract. He further estimated an operating cost for the trucks of $1.50 per hour, and testified that in making his estimate, he allowed for overhead, depreciation, and other costs which enter into the operation of a truck. He, however, makes no deduction for the special equipment in arriving at his estimate of the hourly cost.

Applying the estimated operating cost of $1.50 per hour to the 1,183.8 hours, we find that, had the plaintiffs performed their contract, they would have expended the sum of $1,775.70. Subtracting this sum from $2,545.17, the gross amount which plaintiffs would have been entitled to recover under their contract, leaves an amount of $769.47, which sum represents the greatest amount which the plaintiffs could have recovered without any deduction made for special equipment. But the jury did not find that plaintiffs were entitled to $769.47. They found, without making any deduction for the special equipment that plaintiffs had lost profits in the amount of $591.90. If this amount is correct, there should have been deducted from it $396.70, the equipment cost, which will leave an item of $195.20. Under this computation the plaintiffs would be entitled to $591.90 (profits, $195.20, plus $396.70 expenses). The discrepancy between cost of the truck

equipment declared on ($395.93) and that found by the jury ($396.70) is of no moment because this cost, though added in the verdict as a distinct item of damages, is also added to the cost of performance in calculating the net profits.

Defendant also assigns as error the court's refusal to give defendant's instructions Nos. 2 and 3 and the giving of plaintiff's instruction No. 7. Defendant's instruction No. 2 was properly refused because it instructs the jury that if they should believe that plaintiffs would have earned a profit if they had been permitted to perform the contract, they cannot in addition thereto include the amount of the equipment expense. Defendant's instruction No. 3 is based upon the supposition that plaintiffs would have sustained a loss had they performed the contract. But the jury having found that the plaintiffs made a profit instead of sustaining a loss, the refusal of this instruction, even if proper, could not have been prejudicial. Plaintiffs' instruction No. 7 is not erroneous. It conforms with our theory of the measure of damages and tells the jury that they are entitled in assessing damages to include both the cost of the truck equipment and profits, if any, that they would have realized had they been permitted to perform the contract. If defendant's counsel thought the instruction was confusing in that the jury may not know what should constitute profits, they did not object to it on that ground, and offered no instruction to the effect that in calculating profits the cost of the equipment should have been included in the cost of performing the work.

Defendant's counsel further assign as error the refusal of the court to permit the testimony of W. H. Shaver "that, to perform the contract by use of a non-union crane operator, so as to permit deliveries by use of non-union drivers, would have necessitated entire reorganization of defendant's labor force, breaking its agreement with the Union, bringing on a picket line, and preventing performance of this contract and other contracts with unionized patrons." This testimony was immaterial in view of our holding that the unionization of defendant's plant was simply a super-

vening difficulty which did not relieve defendant of its duty to perform.

The exclusion of the testimony of defendant's witness, Hubert Jones, to the effect that he hauled concrete mix for the defendant in 1939 at fifty cents a batch, which brought an average of approximately $12.00 a day earnings for each truck, which was insufficient to net a profit, did not constitute prejudicial error. His testimony contains no comparison between the type of truck he used and those the O'Dells intended to use in the performance of the contract, and its exclusion was of no importance because the witness was permitted to testify extensively concerning the costs of operating his trucks and the possibility of making profits.

Except for the excessiveness of the verdict, we perceive no prejudicial error in this record.

"When the illegal part of the damages ascertained by the verdict of a jury is clearly distinguishable from the rest, and may be ascertained by the court without assuming the functions of the jury and substituting its judgment for theirs, the court may allow the plaintiff to enter a *remittitur* for such part, and then refuse a new trial." *Chapman* v. *J. W. Beltz & Sons Co.*, 48 W. Va. 1, Pt. 4 Syl., 35 S. E. 1013; *McCallam* v. *Hope Natural Gas Co.*, 93 W. Va. 426, 117 S. E. 148.

Under the circumstances we reverse the judgment of the trial court and remand this action to the Circuit Court of Kanawha County, with directions that, unless plaintiffs agree on the record to release the sum of $396.70, the verdict will be set aside and a new trial awarded. However, if plaintiffs accept the sum of $591.90, defendant's motion for a new trial will be overruled and judgment rendered for said sum of $591.90, with interest from the date of the verdict and costs in the court below; but defendant will be allowed its costs on this writ of error.

*Reversed with directions.*