## BOARD OF ROADS AND REVENUE *v.* CLARK, treasurer.

The public-road fund provided for in the Political Code, § 575, is a county fund within the meaning of the Political Code, § 458; and there being nothing in the general road law, nor in any law relating to the county of Jefferson, which requires the county commissioners of that county to disburse this fund, it was the duty of the commissioners, when the fund came into their posses-

sion, to pay the same over to the county treasurer ; and a performance of this duty may be compelled by mandamus at the instance of the county treasurer.

Argued February 13,— Decided March 12, 1903.

Mandamus.　　Before Judge Evans.　　Jefferson superior court. October 20, 1902.·

*Cain & Hardeman,* for plaintiff in error.
*Phillips & Phillips,* contra.

COBB, J.　This case involves the question whether the "public-road fund" collected under the provisions of the alternative road law is "a county fund," which when collected must be paid to the county treasurer and disbursed by him as other county funds.　The alternative road law provides that the public-road fund shall be made up of an ad valorem tax and a commutation tax, the amount of each to be fixed by the county commissioners of roads and revenue, or the ordinary, as the case may be.　Political Code, §§ 574-5. The fund in controversy in the present case is the commutation tax which is in the hands of the commissioners of roads and revenue of Jefferson county, having been collected by them; and they claim the right to disburse this fund without paying it over to the county treasurer.　The controversy arose on a petition for mandamus brought by the county treasurer of that county to compel the county commissioners to pay the fund over to him, and on the hearing a mandamus absolute was granted.　No question is raised as to the authority of the commissioners ·to collect the tax, and therefore, for the purposes of this case, it will be assumed that it was their duty to do so.　The general road law provides that the ad valorem tax levied for road purposes, and the commutation tax, "shall be used and expended for the purposes of paying the salaries and wages, and for working, improving, and repairing the public roads," as set forth in the act.　The general law of the State in reference to the duties of county treasurers provides that "all county funds are to be paid to, and disbursed by, the county treasurer, except such as may be specially excepted by law, and then to be collected and disbursed as specially directed."　Political Code, § 458.　It will not be seriously questioned, we think, that the public-road fund is a county fund, and therefore, when collected, no matter by whom, it should be paid over to the county treasurer, unless there is something in the alternative road law, or

some other law relating to Jefferson county, which would make some other officer the legal custodian of this fund for the purpose of disbursing it. By an act approved December 13, 1873 (Acts 1873, p. 248), the provisions of the act of December 13, 1871 (Acts 1871–2, p. 225), providing for boards of commissioners for several other counties, was made applicable to the county of Jefferson. Of course, there is nothing in this act expressly relating to the public-road fund, for the reason that this fund came into existence long after the passage of the act. Nor do we find any language in the act which is broad enough to require the county commissioners to become the disbursers of a fund of this character. On the other hand, the provisions of the act indicate that it is the duty of the county commissioners to supervise the collecting and disbursing officer of the county, rather than to perform themselves duties of this character. No other law bearing in any way on the question than the act just referred to and the alternative road law has been called to our attention. The language of the road law above quoted in reference to the expenditure of the fund does not seem to be such a special provision of law as to come within the exception provided for in the section of the code which declares that all county funds shall be paid over to the county treasurer. The county treasurer is the lawfully authorized custodian of county funds. When there is no provision of law to the contrary, county funds must be paid into his hands; and when it is claimed that there is a provision of law which makes an exception to this general rule, it must appear that the legislative intent to make some other officer the custodian of the county fund was plain and manifest. If the General Assembly had intended that the public-road fund should be disbursed by another officer, they would have said so in unmistakable terms, and would have left nothing to implication. The language of the road law relied upon by the commissioners is merely language which would have been used in conferring upon them authority to provide for any other county work, and there is nothing in this language to indicate that the county commissioners should have greater authority over this fund than over any other county fund. They have authority to provide for the lawful disbursement of this fund, just as they have authority to provide for the lawful disbursement of other county funds in the hands of the county treasurer; and when the

fund in controversy in this case is paid over to the treasurer, they will have the same authority over it as over other county funds in his hands.

It is said, though, that even if the county commissioners ought to pay this fund over to the county treasurer, mandamus was not the proper remedy. The code provides that mandamus shall be the remedy to compel the performance of official duty, " if there be no other specific legal remedy for the legal rights." Civil Code, § 4867. If it was the duty of the board of commissioners of Jefferson county to collect this fund, then, after the fund came into their possession, it was their official duty to turn it over to the county treasurer; and we see no reason why a performance of this official duty might not be compelled by mandamus, as we know of no other specific legal remedy which would accomplish this purpose, that is, place in the hands of the county treasurer the particular fund to be disbursed by him in the manner authorized by law. See *Aaron* v. *German*, 114 *Ga.* 587. He might have allowed the county commissioners to disburse the fund, and then have brought suit against the county for his commissions. See *City of Baxley* v. *Holton*, 114 *Ga.* 724. But this would have been merely the assertion of a private right to commissions which were really not earned by actual work done by him, but which were due him because the county commissioners had refused to allow him to disburse the fund. In no other way than by mandamus could the county treasurer compel the county commissioners to pay over the money into his hands, in order that he might disburse the same and do the actual work for which the law gives him commissions. It was therefore the appropriate remedy for a public officer who desired to discharge his duty and collect the fees therefor after that duty had been discharged. This was certainly much fairer to the county than to have allowed other officers to perform the duty and then claim the fees which he would have been entitled to under the law, when no work had been done by him. The demurrer was without merit, and the court did not err in making the mandamus absolute.

*Judgment affirmed. By five Justices.*